## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

UNITED STATES OF AMERICA,

      Plaintiff,

         v.

JOHN RAFTOPOULOS,
DIAMOND PEAK CATTLE COMPANY, LLC,
  a Colorado Limited Liability Company, and
RANCHO GRECO LIMITED, LLC,
  a Colorado Limited Liability Company.

      Defendants.

---

## COMPLAINT

---

      The United States of America, through its undersigned attorneys, by the authority of the Attorney General of the United States, alleges as follows for its complaint against Mr. John Raftopoulos, Diamond Peak Cattle Company, LLC ("Diamond Peak"), and Rancho Greco Limited, LLC ("Rancho Greco") (collectively, "Defendants"):

### <u>NATURE OF THE ACTION</u>

1.     This is a civil action commenced under section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), to obtain injunctive relief and civil penalties against Defendants for the discharge of pollutants into waters of the United States in Moffat County, Colorado, without <u>authorization</u> by the United States Department of the Army, in violation of CWA section 301(a), 33 U.S.C. § 1311(a).

2.    This is also a civil trespass action brought by the United States to recover damages
      caused by Defendants' unauthorized and unpermitted activities associated with re-routing
      Vermillion Creek, and related agricultural activities, including earth-moving, plowing,
      bridge-construction, removal of minerals, and irrigation on federal public lands  managed
      by the U.S. Department of the Interior, Bureau of Land Management ("BLM").  These
      activities constitute a trespass of federal public lands in violation of sections 302, 303,
      and 310 of the Federal Land Policy and Management Act of 1976 ("FLPMA"), 43 U.S.C.
      §§ 1732, 1733 and 1740.

3.    In this action, the United States seeks to: (1) enjoin the discharge of pollutants into waters
      of the United States without a permit in violation of CWA section 301(a), 33 U.S.C. §
      1311(a); (2) enjoin Defendants from continuing to trespass on federal public lands; (3)
      require Defendants, at their own expense and at the direction of EPA and BLM, to restore
      and mitigate the damages caused by their unlawful activities and trespass; and (4) require
      Defendants to pay civil penalties and damages to the United States, as provided in 33
      U.S.C. § 1319(d), 43 U.S.C. § 1733(g), and 43 C.F.R. §§ 2920.1-1 and 2920.1-2.

## JURISDICTION AND VENUE

4.    This Court has jurisdiction over the subject matter of this Complaint pursuant to CWA
      section 309(b), 33 U.S.C. § 1319(b), FLPMA section 303, 43 U.S.C. § 1733, and 28
      U.S.C. §§ 1331, 1345, and 1355.

5.    Venue is proper in this District pursuant to CWA section 309(b), 33 U.S.C. § 1319(b),
      and 28 U.S.C. § 1391(b) and (c) because Defendants reside and conduct business in this

District, the subject property is located in this District, and the cause of action alleged in

this Complaint arose in this District.

## NOTICE

6.     Notice of the commencement of this action has been provided to the State of Colorado

pursuant to CWA section 309(b), 33 U.S.C. § 1319(b).

## THE PARTIES

7.     The Plaintiff in this action is the United States of America.  Authority to bring this action

is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and

519, 43 U.S.C. § 1733, and 33 U.S.C. § 1366.

8.     Defendant John Raftopoulos is an individual who resides in Moffat County, Colorado.

9.     Defendant Diamond Peak is a limited liability company that has its principal place of

business in Colorado.

10.    Defendant Rancho Greco is a limited liability company that has its principal place of

business in Colorado.

11.    This case arises from Defendants' activities that occurred on both land owned by one or

more Defendants and land owned by the United States.

12.    At all times relevant to the Complaint, one or more of the  Defendants owned real

property located in Sections 33 and 34, Township 10 North, Range 102 West, and

Section 3, Township 9 North, Range 102 West, in Moffat County, Colorado, that is the

subject of this Complaint.

13.    At all times relevant to the Complaint, one or more of the Defendants operated and

controlled the earthmoving and construction activities that resulted in the discharge of

pollutants into Vermillion Creek and wetlands adjacent to Vermillion Creek on the real property located in Sections 33 and 34, Township 10 North, Range 102 West, and Section 3, Township 9 North, Range 102 West, in Moffat County, Colorado, that is the subject of this Complaint.

14.  One or more of the Defendants operated and controlled the earth-moving, plowing, bridge-construction, removal of minerals, and irrigation that caused and continue to cause a trespass on federal public lands managed by the BLM located in Section 3, Township 9 North, Range 102 West, in Moffat County, Colorado, that is the subject of this Complaint.

## STATUTORY AND REGULATORY BACKGROUND

### A. The Clean Water Act

15.  CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters except in compliance with, *inter alia*, a permit issued pursuant to CWA section 404, 33 U.S.C. § 1344.

16.  CWA section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army, acting through the Chief of Engineers, to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

17.  CWA section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

18.  CWA section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, *inter alia*, dredged spoil, rock, sand, and cellar dirt.

4

19.     CWA section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

20.     CWA section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

21.     CWA section 502(5), 33 U.S.C. § 1362(5), defines "person" to include an individual and a corporation.

22.     CWA section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

23.     CWA section 309(d), 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

**B.  The Federal Land Policy and Management Act**

24.     Section 302(b) of the Federal Land Policy and Management Act of 1976 provides that, "[i]n managing the public lands, the Secretary shall . . . regulate, through easements, permits, leases, licenses, published rules, or other instruments as the Secretary deems appropriate, the use, occupancy, and development of the public lands."  43 U.S.C. § 1732.  The BLM acts on behalf of the Secretary of the Interior to perform these responsibilities.

25.     In order to allow federal property to be managed according to law, BLM regulations implementing FLPMA forbid the unauthorized use of public lands, which constitutes a trespass. "Trespass" is defined as follows:

   a.  "Trespass is using, occupying, or developing the public lands or their resources without a required authorization . . . Trespass is a prohibited act."

   b.  "Trespass includes acts or omissions causing unnecessary or undue degradation to the public lands or their resources.  In determining whether such degradation is occurring, BLM may consider the effects of the activity on resources and land uses outside the area of the activity."

43 C.F.R. § 2808.10(a)-(b).

26.    BLM regulations, 43 C.F.R. § 2920.1-2, further provide that anyone found to have trespassed on federal land shall be liable to the United States for:

   1)   The administrative costs incurred by the United States as a consequence of such trespass; and

   2)   The fair market value rental of the lands for the current year and past years of trespass; and

   3)   Rehabilitating and stabilizing the lands that were the subject of such trespass or if the person determined to be in trespass does not rehabilitate and stabilize the lands determined to be in trespass within the period set by the authorized officer in the notice, he/she shall be liable for the costs incurred by the United States in rehabilitating and stabilizing such lands.

43 C.F.R. § 2920.1-2(a)(1)-(3).

27.    BLM regulations also allow for the imposition of penalties for a trespass, and where such a trespass is knowing and willful, a penalty of three times the fair market rental value of the subject land may be assessed.  43 C.F.R. § 2920.1-2(b)(2).

28.   Pursuant to FLPMA, 43 U.S.C. § 1733(b), the United States may seek an injunction or other appropriate order to prevent any person from utilizing public lands in violation of regulations issued by the Secretary of the Department of the Interior.

## GENERAL ALLEGATIONS

29.   Commencing in approximately 2012 and as recently as approximately 2015, at specific times best known by Defendants, Mr. Raftopoulos, Diamond Peak, Rancho Greco, and/or persons acting on their behalf discharged dredged or fill material into waters of the United States without a permit required by CWA Section 404 at the real property located in Sections 33 and 34, Township 10 North, Range 102 West, and Section 3, Township 9 North, Range 102 West, in Moffat County, Colorado (hereinafter referred to as the "Site").

30.   The discharge of dredged or fill material referenced in paragraph 29 was associated with (i) the filling of a portion of the channel of Vermillion Creek and adjacent wetlands in order to route the creek into a new channel and facilitate agricultural activities; and (ii) the construction of a bridge across Vermillion Creek.

31.   The dredged or fill material that Mr. Raftopoulos, Diamond Peak, Rancho Greco, and/or persons acting on their behalf caused to be discharged includes, among other things, dirt, spoil, rock and sand, all of which constitute "pollutants" as defined in CWA section 502(6), 33 U.S.C. § 1362(6).

32.   Mr. Raftopoulos, Diamond Peak, Rancho Greco, and/or persons acting on their behalf used mechanized earth-moving equipment to accomplish the discharges of dredged or fill

material.  This equipment constitutes "point sources" as defined in CWA section 502(14), 33 U.S.C. § 1362(14).

33.     Defendants did not obtain a permit from the Secretary of the Army, acting through the Corps of Engineers, for the discharges of dredged or fill material into waters of the United States as required by CWA sections 301(a) and 404, 33 U.S.C. §§ 1311(a) and 1344.

34.     One or more of the Defendants owned a portion of the Site on which unauthorized discharge of dredged or fill material into waters of the United States occurred, and Mr. Raftopoulos, Diamond Peak, and/or Rancho Greco conducted or controlled the activities that resulted in the unauthorized discharge of dredged or fill material into waters of the United States on the Site.

35.     One or more of the Defendants conducted, contracted for, supervised and/or otherwise controlled the unauthorized activities described in Paragraph 29.

36.     Mr. Raftopoulos, Diamond Peak, and Rancho Greco are persons within the meaning of CWA section 502(5), 33 U.S.C. § 1362(5).

37.     Vermillion Creek is a relatively permanent, continuously flowing tributary of the Green River, and was so at the time Defendants discharged the fill described in Paragraph 29.

38.     Vermillion Creek forms a geographic feature that is described in ordinary parlance as a creek.

39.     Vermillion Creek flows into the Green River approximately three miles downstream from the Site.

40.    The Green River, at its confluence with Vermillion Creek, is a traditional navigable water.

41.    Prior to Defendants' activities described in Paragraph 29 above, the Site, at the location of the earth-moving activities, contained wetlands that were adjacent to, directly abutted, and had a continuous surface connection to Vermillion Creek.

42.    The reach of Vermillion Creek at the Site and the wetlands described in Paragraph 41 above, together with similarly situated lands in the region, served functions important to the health of the Vermillion Creek and Green River watersheds.

43.    The reach of Vermillion Creek at the Site and the wetlands described in Paragraph 41 above, together with similarly situated lands in the region, significantly affect the chemical, physical and biological integrity of Vermillion Creek and the Green River.

44.    Vermillion Creek and the Green River constitute "waters of the United States" within the meaning of CWA section 502(7), 33 U.S.C. § 1362(7), and regulations promulgated thereunder.

45.    The wetlands described in Paragraph 41 above were "waters of the United States" within the meaning of CWA section 502(7), 33 U.S.C. § 1362(7), and regulations promulgated thereunder.

46.    Mr. Raftopoulos, Diamond Peak, and/or Rancho Greco have violated and continue to violate CWA section 301(a), 33 U.S.C. § 1311(a), by the unauthorized discharges of dredged or fill material into waters of the United States, including Vermillion Creek and its adjacent wetlands, at the Site.

47.     Each day that such material remains in place constitutes a separate violation of CWA

        section 301(a), 33 U.S.C. § 1311(a).

48.     Unless enjoined, Mr. Raftopoulos, Diamond Peak, and Rancho Greco are likely to

        continue to discharge dredged or fill material into and/or to allow dredged or fill material

        to remain in the Site, in violation of CWA section 301, 33 U.S.C. § 1311.

49.     Defendants engaged in various unauthorized and unpermitted activities on federal public

        lands at the Site, including earth-moving, plowing, bridge-construction, removal of

        minerals, and irrigation over a multi-year period.

50.     The activities at the Site described in Paragraph 49 occurred on lands owned by the

        United States and managed by the BLM.

51.     Defendants' earth-moving and related activities caused the degradation and destruction of

        natural resources and habitat on federal public lands.  This includes, but is not limited to,

        the relocation of the naturally formed channel of Vermillion Creek, the destruction of

        wetlands and related riparian habitat, the felling of mature cottonwood trees, and the

        removal of natural vegetation and shrubs on federal public lands at the Site.

52.     Defendants' earth-moving and related activities re-routed a portion of Vermillion Creek

        on federal public lands at the Site, which has caused, and continues to cause, increased

        erosion and sedimentation, and related degradation to wetlands and riparian habitat.

53.     Defendants' earth-moving and related activities destroyed a cadastral survey marker

        located on federal lands.

54.    Defendants also plowed and irrigated, without authorization, federal lands at the Site, and re-routed water from Vermillion Creek to be used in an irrigation pivot used to irrigate federal public lands on the Site.

55.    Defendants constructed a bridge, made of concrete and stone, on federal public lands and across Vermillion Creek, without authorization.

56.    Defendants excavated federal minerals for purposes of constructing this bridge, without authorization.

57.    Defendants engaged in the actions described in Paragraphs 49-56 on federal public lands without any permit or other authorization from the BLM.

58.    Defendants' trespass activities described in Paragraphs 49-56 above are continuous and ongoing.

59.    Harm to federal property has occurred and will continue to occur unless this Court declares that Defendants' actions are unlawful and enjoins them from further trespassing upon federal property.

## FIRST CLAIM FOR RELIEF
### (Discharge into Waters of the United States without a Section 404 Permit)

60.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 59.

61.    Commencing in approximately 2012, at times better known to Defendants, Mr. Raftopoulos, Diamond Peak, Rancho Greco, and/or persons acting on their behalf discharged dredged or fill material into Vermillion Creek and its adjacent wetlands at the Site, located in Moffat County, Colorado.

62.     The segment of Vermillion Creek and its adjacent wetlands at the Site are "waters of the
        United States" within the meaning of the Clean Water Act and the regulations
        promulgated thereunder.

63.     Mr. Raftopoulos, Diamond Peak, and Rancho Greco did not obtain a permit from the
        Secretary of the Army for the discharges of this dredged or fill material into waters of the
        United States as required by the Clean Water Act.

<u>**SECOND CLAIM FOR RELIEF**</u>
**(Trespass and Ejectment –**
**Violation of Federal Land Policy and Management Act, 43 U.S.C. § 1733(b), and Agency**
**Regulations)**

64.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 63.

65.     Commencing in approximately 2012, at times better known to Defendants, Mr.
        Raftopoulos, Diamond Peak, Rancho Greco, and/or persons acting on their behalf
        engaged in various activities at the Site, including earth-moving, plowing, bridge-
        construction, removal of minerals, and irrigation without a permit or authorization, on
        federal public lands.

66.     Defendants acted willfully and with knowledge that they committed these acts on federal
        public lands without authorization or permit from the BLM or any other United States
        federal agency.

67.     These unauthorized and unpermitted actions constitute a trespass on federal public lands.

68.     Defendants' unauthorized use and occupancy of federal public lands at the Site constitute
        a continuing trespass, which, unless permanently enjoined, will persist.

69.     As a direct result of Defendants' willful and unlawful trespasses, the United States has
        sustained damages.

70.   Pursuant to FLPMA, 43 U.S.C. § 1733(b), the United States may seek recovery of monetary damages for violations of regulations issued by the Secretary of the Department of the Interior.

71.   Defendants' affirmative acts of re-routing Vermillion Creek on federal public lands, along with earth-moving, plowing, bridge-construction, removal of minerals, and irrigation on and over federal public lands, was in violation of the following regulations: 43 C.F.R. § 2808.10, 43 C.F.R. § 2888.10, 43 C.F.R. § 2920.1-2(a), and 43 C.F.R. § 9239.0-7.

72.   Defendants must rehabilitate and stabilize the federal public lands damaged and disturbed by Defendants' trespass, or must compensate the United States for the cost of such rehabilitation and stabilization, if and when it conducts such work.

73.   The United States is entitled to monetary damages from Defendants, equal to three times the fair market value of the federal public lands damaged by Defendants' activities for the entire period of Defendants' unlawful occupancy and use of such lands.

74.   The United States is entitled to recover its administrative costs associated with the BLM's response to Defendants' trespass on federal public lands at the Site.

75.   The United States is entitled to possession of the lands that have been damaged and removed from its possession by Defendants' unauthorized bridge construction, based on the federal common law of ejectment, and to an order from this Court directing Defendants to promptly remove the bridge and any other of Defendants' property placed on federal public lands at the Site.

## THIRD CLAIM FOR RELIEF
### (Common Law Trespass)

76. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1 through 75.

77. Defendants' unauthorized use and occupancy of the federal public lands at the Site constitute a physical intrusion on those federal public lands, which are property of the United States and, unless permanently enjoined, will persist.

78. As a direct result of Defendants' willful and unlawful trespass and disturbances to the Site, the United States has sustained damages.

79. The United States is entitled to monetary damages from Defendants for the fair market value of the federal lands disturbed, or for the costs necessary to fully restore and repair the disturbed lands, or both, in an amount to be determined at trial.

80. The United States is entitled to an order ejecting Defendants' from the Site, removing Defendants' unauthorized structures, and enjoining Defendants from future unauthorized occupancy and use of the Site.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

That Mr. Raftopoulos, Diamond Peak, and Rancho Greco be permanently enjoined from discharging or causing the discharge of dredged or fill material or other pollutants into any waters of the United States except in compliance with the Clean Water Act;

That Mr. Raftopoulos, Diamond Peak, and Rancho Greco be enjoined to undertake measures, at Mr. Raftopoulos', Diamond Peak's, and Rancho Greco's own expense and at the

direction of EPA and the BLM, to restore the Site and to conduct mitigation for irreversible environmental damage, as appropriate;

That Mr. Raftopoulos, Diamond Peak, and Rancho Greco be assessed pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), a civil penalty for each day of each violation of CWA section 301(a), 33 U.S.C. § 1311(a);

That the Court declare, in accordance with 28 U.S.C. § 2201, Defendants' conduct unlawful, order them to rehabilitate and stabilize the federal lands damaged by their activities, and enjoin them from committing further acts of trespass upon federal property in the future.

That the Court award monetary damages to the United States for Defendants' trespass on federal public lands managed by the BLM as described above.

That the United States be awarded costs and disbursements in this action; and

That this Court grant the United States such other relief as the Court may deem just and proper under the law and the facts of this case.

Respectfully submitted,

JEFFREY BOSSERT CLARK
Assistant Attorney General
Environment and Natural Resources
  Division

*s/ Alan D. Greenberg*
_____
ALAN D. GREENBERG
Environmental Defense Section
U.S. Department of Justice
999 18th St., Suite 370
Denver, Colorado 80202
Phone: (303) 844-1366
Fax: (303) 844-1350
E-mail:  alan.greenberg@usdoj.gov

JASON DUNN
United States Attorney

*s/ Jacob Licht*

_____
JACOB LICHT
Assistant United States Attorney
U.S. Attorney's Office for the District of Colorado
1801 California Street, Suite 1600
Denver, Colorado 80202
Direct: (303) 454-0100
Fax: (303) 454-0404
jacob.licht-steenfat@usdoj.gov

Attorneys for Plaintiff United States

OF COUNSEL:

Sheldon H. Muller, Senior Assistant Regional Counsel
United States Environmental Protection Agency
Region 8
1595 Wynkoop St.
Denver, Colorado 80202

Dated: October 22, 2020